**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDRONIKI GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-12362 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Androniki Gray filed for Chapter 13 bankruptcy in Louisiana. A few months later, she opened two accounts for credit with Conn's, a furniture and home-goods store. She did some shopping and borrowed a few thousand dollars.

Gray eventually converted her bankruptcy case to Chapter 7, and she received a discharge. She thought that she was home-free when it came to her debts.

Sometime later, Gray discovered a mistake on a consumer report from Experian. The report continued to include the amounts owed to Conn's, even though she had received a discharge. Gray contacted Experian about the mistake, but she got nowhere. She had no luck getting Experian to fix it.

So Gray sued, bringing two claims under the Fair Credit Reporting Act. She claims that Experian does not use reasonable procedures to assure the maximum possible accuracy of its reports. She also claims that Experian failed to respond to and reinvestigate her dispute about the accuracy of the report. Experian, in turn, moved to dismiss.

For the following reasons, the motion to dismiss is granted in part and denied in part.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

## I.     Experian

Experian Information Solutions, Inc. is a "consumer reporting agency." *See* Second Am. Cplt., at ¶ 7 (Dckt. No. 19); 15 U.S.C. § 1681a(f). As a reporting agency, Experian assembles and distributes "consumer reports." *See* Second Am. Cplt., at ¶ 9; 15 U.S.C. § 1681a(d).

Consumer reports are what they sound like. They're reports that provide detailed information about the financial condition of a consumer.

Consumer reports typically contain four categories of information. First, consumer reports give "identifying information," like a consumer's name, address, date of birth, and contact information. *See* Second Am. Cplt., at ¶ 18 (Dckt. No. 19).

Second, reports contain "tradeline information." *Id.* Tradeline information describes a consumer's credit history, types of credit accounts, credit limits, loan amounts, account balances, payment history, and account status. *Id.*

Third, reports provide "public record information," such as bankruptcy filings. *Id.*

Finally, reports give a history of a consumer's credit inquiries. *Id.* They identify entities that have accessed a consumer's file through either a "hard inquiry" or "soft inquiry." *Id.*

The information in consumer reports comes from various sources. *Id.* at ¶ 19. Sometimes information comes directly from "furnishers." Once again, that word means just

2

what you think it means. Furnishers are creditors who furnish information directly to consumer reporting agencies. *Id.*

Experian also gets information from third party vendors, like PACER or Lexis-Nexis. *Id.* And in particular, Experian buys information about bankruptcy filings, including information about discharges. *Id.* at ¶¶ 17, 20. A discharge is a court order that relieves a debtor of the obligation to repay some or all of his or her debts. It wipes the slate clean.

Financial institutions rely on consumer reports when making loans and extending credit. *Id.* at ¶ 24. They play a big role when calculating FICO scores. *Id.* at ¶¶ 25, 29.

Consumer reports provide data to financial institutions about a consumer's debt-to-income ratio. *Id.* at ¶¶ 30, 32. A bad FICO score or debt-to-income ratio makes borrowing harder. *Id.* at ¶¶ 29, 34. Lenders charge poorly rated consumers higher interest rates and lend them less money, if any. *Id.* at ¶ 34.

## II.     Gray

In 2019, Gray filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana. *Id.* at ¶ 51.

After the filing, Gray continued to borrow. She opened an account with Conn's, Inc.[1] on July 25, 2021. *Id.* at ¶ 58. Then, she opened a second Conn's account on April 1, 2022. *Id.* at ¶ 68. Gray borrowed $1,556 on one account, and borrowed $3,002 on the other account. *Id.* at ¶¶ 66, 70.

---

[1] In Gray's filings in this Court, she spells Conn's "Conns" with no apostrophe. But in filings to the Bankruptcy Court, she spelled it "Conn's" with an apostrophe. *See* Amended Schedules, at 6 (Dckt. No. 23-2). As an aside, the parties don't explain what Conn's is, but this Court assumes that it's the furniture and home-goods store.

A couple years later, in March 2023, Gray converted her Chapter 13 bankruptcy to a Chapter 7 bankruptcy. *Id.* at ¶ 52. A schedule listed the debts owed to unsecured creditors, and it included $3,483 owed to Conn's. *See* Schedule (Dckt. No. 23-2, at 6 of 11).

In July 2023, she received an order of discharge from the bankruptcy court. *Id.* at ¶ 53. The bankruptcy court used a fillable form, known as Official Form 318.

Official Form 318 is a fill-in-the-blanks form that bankruptcy judges use when issuing orders of discharge in Chapter 7 cases. It basically requires the bankruptcy court to fill in the name of the debtor, the case number, and the date, and then sign the order.

The bankruptcy judge in Gray's case filled in the blanks and signed the form. The order itself didn't include a lot of details about what, exactly, the discharge covered. The order simply stated: "IT IS ORDERED: A discharge under 11 U.S.C. § 727 is granted to" Gray as the debtor. *See* Order of Discharge (Dckt. No. 23-3).

Below the signature of the bankruptcy judge, the order included a few paragraphs under the heading "Explanation of Bankruptcy Discharge in a Chapter 7 Case." *Id.* Again, that language was standard language that appeared on the form itself, and was not created for Gray in particular.

One of the paragraphs appeared under a subheading entitled "Most debts are discharged." It read: "Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed." *Id.*

The next page included examples of debts that were not discharged, including debts owed for domestic support obligations, taxes, student loans, debts that the bankruptcy court has carved out, and so on. The list didn't include ordinary consumer debts.

A nearby paragraph said that the information was "only a general summary of the bankruptcy discharge; some exceptions exist." *Id.* "Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case." *Id.*

The complaint alleges that the order of discharge extinguished any debts that Gray incurred before the discharge took effect, including the amounts owed on her Conn's accounts. *See* Second Am. Cplt., at ¶¶ 36–38, 64, 68 (Dckt. No. 19). At that point, she owed Conn's nothing. *Id.* at ¶ 54.

## III.    The Inaccurate Report

The next year, Experian created a consumer report about Gray. *Id.* at ¶ 56. The report provided information about her bankruptcy filing in its "Public Records" section, including the name of the court, the case number, and the filing date. *Id.* at ¶ 58. Importantly, the report stated that Gray had received a bankruptcy discharge. *Id.*

But the report also included a mistake. Experian incorrectly reported that Gray owed outstanding debt on the two accounts with Conn's. *Id.* Instead of showing a balance of $0, Experian listed both accounts as having an outstanding balance of $1,556 and $3,002, respectively. *Id.* at ¶¶ 66, 70.

Gray responded by reaching out to Experian, and tried to get the company to correct its report. She didn't get very far.

Gray sent Experian a dispute letter and asked Experian to remove the balances from her consumer report. *Id.* at ¶ 89. She wrote:

> To whom it may concern . . . I am contesting the information on my credit report that I believe is not correct. . . CONNS Account Number: 581006270 . . . Please remove it from my credit report. . . CONNS Account Number: 581006271 Please remove it from my credit report.

*Id.* at ¶ 91; *see also* Dispute Letter (Dckt. No. 23-5, at 3 of 16).[2]

But Experian never responded to her letter, and it never reinvestigated Gray's dispute about the Conn's accounts. *See* Second Am. Cplt., at ¶¶ 92, 93 (Dckt. No. 19). Instead, Experian continued to inaccurately report outstanding balances on the two accounts. *Id.* at ¶¶ 95, 182, 184.

## IV.     The Lawsuit

Gray sued Experian, bringing seven claims. She later dropped five of them after receiving the motion to dismiss.

The second amended complaint includes two claims under the Fair Credit Reporting Act. The first claim is about the inaccuracy in the report, and the second claim is about Experian's failure to fix it.

First, Gray claims Experian did not follow reasonable procedures to assure maximum possible accuracy in her consumer report, in violation of section 1681e(b) of the FCRA. *See* 15 U.S.C. § 1681e(b). Second, Gray alleges that Experian failed to respond to her dispute letter and reinvestigate whether her Conn's accounts were discharged, in violation of 1681i of the FCRA. *See* 15 U.S.C. § 1681i.

Experian moved to dismiss.

---

[2] Gray referred to the dispute letter in her complaint, but did not attach the letter itself. Experian provided a copy of the dispute letter with its motion to dismiss. The dispute letter is fair game at the motion-to-dismiss stage. When ruling on a motion to dismiss, a court can consider not only "the complaint itself," but also "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013). Here, the dispute letter is both "critical to the complaint and referred to in it[.]" *See Phillips*, 714 F.3d at 1019. Gray directly quotes from the dispute letter in her complaint. *See* Second Am. Cplt., at ¶ 91. As an aside, the bankruptcy filings are fair game, too. Gray referred to the bankruptcy filings in her complaint. And a court can take judicial notice of court filings. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Analysis**

Congress enacted the Fair Credit Reporting Act "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA tries to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

The FCRA imposes a number of duties on consumer reporting agencies, and two of those duties are relevant here.

For starters, section 1681(e) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer report. *See* 15 U.S.C. § 1681e(b).

But sometimes mistakes happen, and that's when section 1681i comes into play. If a consumer takes issue with the completeness or accuracy of information in a report, then consumer reporting agencies must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *See* 15 U.S.C. § 1681i.

Gray invokes both provisions. She brings claims about Experian's original mistake, and about its failure to fix it.

To bring a claim, Gray must allege "that something in [her] credit report was inaccurate, or at least misleading" in order "to show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b), or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i." *See Johnson v. TransUnion, LLC*, 524 F. App'x 268, 270 (7th Cir. 2018) (internal citations omitted) (collecting cases).

Put another way, claims under section 1681e(b) and section 1681i(a) have overlapping elements. "In order to state a claim under either Section 1681e(b) or Section 1681i(a), Plaintiff must allege that: '(1) inaccurate information was included in [her] consumer credit reports; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) [she] suffered injury; and (4) the injury was caused by the inclusion of the inaccurate entry.'" *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, at *3 (N.D. Ill. 2016) (quoting *Moline v. Experian Info. Sols., Inc.*, 289 F. Supp. 2d 956, 958 (N.D. Ill. 2003)) (alterations in original).

But the second element is a bit different for each claim. Section 1681e(b) requires reasonable procedures on the front end. And section 1681i requires a reasonable reinvestigation

on the back end. *See Crump v. Carrington Mortg. Servs., LLC*, 2019 WL 118490, at *5 (N.D. Ill. 2019) (Feinerman, J.); 15 U.S.C. § 1681e(b); 15 U.S.C. § 1681i(a).

This Court will start with the claim about the original mistake, and then will finish with the claim about the failure to fix it.

## I. The Section 1681e(b) Claim

The first claim is about the fact that Experian generated an inaccurate report in the first place. Gray alleges that Experian failed to follow reasonable procedures to ensure an accurate report.

The first element of a claim is the existence of a mistake. "A threshold requirement for claims under [section 1681e(b)] is that there must be an inaccuracy in the consumer's credit report." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021). Consumer reporting agencies are only liable for factual inaccuracies, not legal ones. *Id.*

"[E]xamples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an account or incurred a payment." *Id.* at 568. But legal inaccuracies "require the consumer reporting agencies to make . . . legal determinations about the facts or legal judgments." *Id.*

The "paradigmatic example of a legal dispute is when a consumer argues that [their debt] is invalid due to a violation of law." *Id.* at 567. However, "[t]aking notice of a previously resolved legal dispute . . . does not require the consumer reporting agency to make any legal determinations about the underlying claim," even if it requires "some knowledge of the legal impact of court decisions." *Id.*

Here, the bankruptcy discharge order provided that "[a] discharge under 11 U.S.C. § 727 is granted" to Gray. *See* Order of Discharge, at 1 (Dckt. No. 30-2). It did not provide any

9

additional details. And it did not point expressly to the schedule of debts owed to unsecured creditors, let alone to the debts to Conn's in particular.

The bottom of the page included some additional explanation, albeit at a high level of generality. The language was boilerplate from the Official Form 318 itself. One of the paragraphs stated that "[m]ost debts are covered by the discharge, but not all." *See* Order of Discharge, at 1 (Dckt. No. 30-2).

After the discharge, Experian continued to include the debts owed to Conn's on Gray's consumer reports. Maybe Experian could have argued that it made a legal mistake, not a factual mistake. *See, e.g.*, *Allen v. Equifax Info. Servs., LLC*, 2026 WL 509222, at *3–4 (N.D. Ill. 2026). That said, a mistake about "the amount a consumer owes" is a factual mistake, not a legal mistake. *See Chuluunbat*, 4 F.4th at 568. In any event, Experian didn't make that argument, so this Court won't reach it.

Instead, Experian focuses on the second element of the claim. As Experian sees things, Gray simply alleges that her consumer report contained a mistake. And the existence of a mistake, without more, cannot give rise to a claim.

Time and again, the Seventh Circuit has made clear that the Fair Credit Reporting Act does not impose liability based on the mere existence of a mistake. "[A]s we have said before, the Fair Credit Reporting Act is not a strict liability statute." *See Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019); *see also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) ("[T]he credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report.").

10

After all, the economy is ginormous, and consumer reporting agencies receive many millions of pieces of financial information. The credit reporting system produces a "vast flow and store of consumer information." *See Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). "[A]ccording to the Consumer Financial Protection Bureau, each of the nationwide consumer reporting agencies receive information from furnishers on over 1.3 billion consumer credit accounts or trade lines on a monthly basis." *Id.*

"In a nation of 330 million people, billions of pieces of credit information are generated each year. Mistakes in compiling and reporting that information are inevitable." *See Chaitoff v. Experian Info. Solutions, Inc.*, 79 F.4th 800, 808 (7th Cir. 2023).

"One can easily see how, even with safeguards in place, mistakes can happen. But given the complexity of the system and the volume of information involved, a mistake does not render the procedures unreasonable." *Sarver*, 390 F.3d at 972.

The FCRA requires reasonableness, not perfection. The statute "does not require unfailing accuracy from consumer reporting agencies." *See Denan*, 959 F.3d at 294. "[T]he Fair Credit Reporting Act requires only that the procedures adopted by credit-reporting agencies be 'reasonable' in relation to the goal of accurate credit reporting." *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015).

The Seventh Circuit had planted guideposts that shed light on what's reasonable. Consumer reporting agencies can rely on information provided by financial institutions. *See Sarver,* 390 F.3d at 972–73. Consumer reporting agencies can rely on public court dockets, even if the dockets contain errors. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 285–86 (7th Cir. 1994). And consumer reporting agencies are not required to classify bankruptcy dismissals. *See Childress*, 790 F.3d at 747–48.

11

Gray offers a few arguments why, in its view, Experian failed to follow reasonable procedures.

Gray's first argument is about the unreliability of Conn's as a furnisher. The complaint acknowledges the possibility that Experian got bad information from Conn's. That is, maybe Conn's made a mistake and continued to report the debt to Experian, even after the bankruptcy discharge. *See* Second Am. Cplt., at ¶¶ 80–81 (Dckt. No. 19).

The complaint alleges that Experian acted unreasonably if it relied on bad information from Conn's. *Id.* As Gray sees things, Conn's was an unreasonable source of information, and Experian should have known it. *Id.*

That theory won't get Gray anywhere. The statute requires "reasonable procedures," nothing more. It is not reasonable to expect a consumer reporting agency to keep track of all furnishers nationwide, and figure out which ones are reliable and which ones aren't. *See Butler v. Trans Union LLC*, 2025 WL 2767016, at *4 (N.D. Ill. 2025).

This Court doesn't know how many furnishers across the country provide information to Experian. But whatever the number is, it is somewhere north of A Lot.

A consumer reporting agency doesn't have an obligation to keep tabs on the furnishers themselves, figure out which ones are less reliable, and apply greater scrutiny to their information. Simply put, "the cost of verifying the accuracy of the source" outweighs "the possible harm inaccurately reported information may cause the consumer." *See Henson*, 29 F.3d at 287.

If a consumer reporting agency receives bad information from a furnisher, then it might lead to "garbage in, garbage out." But that doesn't make a consumer reporting agency liable for any rubbish in the report.

After all, the statutory scheme does not saddle consumer reporting agencies with the exclusive responsibility for accurate information. "Furnishers bear responsibility for accurately reporting information to CRAs in the first instance." *Chaitoff*, 79 F.4th at 817 (citing 15 U.S.C. § 1681s-2 and *Denan*, 959 F.3d at 294–95). Consumer reporting agencies can rely on furnishers because furnishers have an independent duty to provide accurate information. *See Allen*, 2026 WL 509222, at *4.

True, the Seventh Circuit in *Sarver* acknowledged in *dicta* the possibility that a furnisher might be so unreliable that a consumer reporting agency cannot reasonably rely on it. "In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily." *See Sarver*, 390 F.3d at 972.

Maybe a furnisher could stick out like a sore thumb, compared to the untold thousands and thousands of furnishers across the country. But it's asking a lot of a consumer reporting agency to figure that out, one-by-one.

Plus, the complaint at hand does not allege facts that could give rise to a plausible inference that Conn's was the bottom of the barrel. At best, Gray offers a conclusory allegation that has the distinct feel of a cut-and-paste pleading: "Defendant knew from past experiences that Conns [sic] furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged." *See* Second Am. Cplt., at ¶ 80 (Dckt. No. 19).

13

That's a conclusory allegation and a conclusory allegation won't cut it. *See Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (confirming that a district court can "reject sheer speculation, bald assertions, and unsupported conclusory statements").

Gray's second argument is about the default rules in a Chapter 7 bankruptcy. Gray points out that a Chapter 7 bankruptcy discharge presumptively wipes out all consumer debts. *See* Second Am. Cplt., at ¶ 61 (Dckt. No. 19). So, Experian "should have known the information reported about [Gray] was inaccurate." *Id.* at ¶¶ 154–55.

That theory goes nowhere fast. If Conn's continued to report the debt as an outstanding obligation, then Experian did not have to do bankruptcy-sleuthing to figure out if Conn's had it right. After all, a default rule is just that – a default rule. The bankruptcy court could have carved out the Conn's debt from the discharge order.

Experian didn't have a duty to do the dirty work to figure it out. Experian did not have an obligation to dig into the bankruptcy docket, unearth the discharge order, and figure out if the furnisher was right. That's an unreasonable burden, and the statute only requires reasonable procedures.

The FCRA does not require a consumer reporting agency to employ "a live human being, with at least a little legal training, to review every bankruptcy" order to confirm the effect of a general discharge order on a specific debt. *See Childress*, 790 F.3d at 747; *see also Allen*, 2026 WL 509222, at *4 ("Defendant was under no obligation to dig through court records and legally analyze whether the [furnisher's] Accounts in particular were actually discharged under bankruptcy law."); *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108–09 (8th Cir. 2022) ("We join our sister circuits in rejecting the invitation to mandate that CRAs hire individuals

14

with legal training to preemptively determine the validity of reported debts.") (citing *Childress*, 70 F.3d at 747 and *Henson*, 29 F.3d at 287).

The FCRA does not "require credit agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action." *See Henson*, 29 F.3d at 285. By the same token, the FCRA does not require consumer reporting agencies to go to bankruptcy dockets to doublecheck the information provided by furnishers, either.

The statute recognizes a simple reality. Consumers, not consumer reporting agencies, are in the best position to know whether the information about consumers is right. *Id.* at 286 (acknowledging that the "consumer is in a better position than the credit reporting agency to detect errors"). "Once the information is erroneously reported on the consumer's credit report, the consumer will be alerted to the error and can then seek correction of the error by notifying the credit reporting agency or the court itself." *Id.*

That's why the FCRA applies a forgiving standard of reasonableness. Consumer reporting agencies have to adopt reasonable procedures, but they don't have to turn over every stone on the beach and figure out if every furnisher is reliable.

Even so, the complaint pleads facts in the alternative. It alleges another possibility for the mistake.

Maybe Conn's reported accurate information after all. That is, maybe Conn's reported that the debts from Gray *were* discharged, and Experian nonetheless showed the debt as outstanding. *See* Second Am. Cplt., at ¶ 79 (Dckt. No. 19).

Or, another possibility is that Conn's said nothing. *Id.* at ¶ 82. Maybe Conn's didn't provide any information to Experian, one way or the other. Maybe Experian received the

15

discharge order, but simply made a mistake. That is, maybe Experian mistakenly continued to report the Conn's debt as owed, even though it removed all other discharged debt (meaning debt formerly owed to other creditors) from her report.

It's hard to say in the abstract whether such facts would give rise to a claim, because the facts remain in flux. A motion to dismiss isn't the best time to ferret out what happened. That's what discovery is for.

This Court can't definitively say at the motion-to-dismiss stage that Experian's procedures were reasonable. But this Court can and does say that a few of Gray's theories of liability can't give rise to a claim.

So, for now, the claim survives in part. Gray can't bring a claim based on the generic allegation that Experian should have known that Conn's was unreliable. And Gray can't claim that Experian should have doublechecked the bankruptcy docket and confirmed the accuracy of what Conn's represented. Otherwise, for the time being, the claim survives.

## II.     The Section 1681i Claim

The second claim is about what Experian did, and didn't do, when it learned about the mistake.

The FCRA requires consumer reporting agencies to investigate when consumers notify them about a possible mistake. When a consumer disputes "the completeness or accuracy of any item of information" in a report, the reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *See* 15 U.S.C. § 1681i(a)(1)(A).

Within five days of receiving notice of a dispute, the agency must provide the consumer "all relevant information regarding the dispute." *See* 15 U.S.C. § 1681i(a)(2)(A). The agency must "conduct a reasonable reinvestigation" within 30 days of it being notified of the dispute by the consumer. *See* 15 U.S.C. § 1681i(a)(1)(A). After its reinvestigation, the agency must

16

determine whether the disputed information is inaccurate or delete the information from the file. *Id.*

According to the complaint, Gray sent a dispute letter to Experian, but Experian ignored it and did nothing. As Gray sees things, Experian dropped the ball and breached its duty to reinvestigate.

Experian doesn't deny that it received a dispute letter. Instead, Experian argues that it did not breach its duty to reinvestigate because Gray is a liar.

Experian attached to its motion to dismiss three Identity Theft Reports that Gray submitted to the Federal Trade Commission in November 2024. *See* Identity Theft Reports (Dckt. No. 23-5, at 8–13 of 16). One of the reports refers to the "Chapter 13 Bankruptcy" and the "Chapter 7 Bankruptcy." *Id.* at 10 of 16. And another report mentions "CONNS." *Id.* at 16 of 16.

She asked the FTC to "[i]mmediately" remove "all of the following ACCOUNTS / Bankruptcy and FRAUDULENT INQUIRIES off [her] credit report as quickly as possible." *Id.* at 10 of 16. She filed the reports under penalty of perjury.

It's hard to know what to make of those reports. But it is easy to make quick work of them at the motion-to-dismiss stage.

Maybe, for the sake of argument, Gray falsely submitted identity theft reports to the FTC. But if so, it would make no difference at the motion-to-dismiss stage. A motion to dismiss is about the sufficiency of a pleading, but the complaint at hand makes no mention of the identity theft reports. So the Court can't consider them.

A false statement to the federal government might undermine her credibility. And one might wonder why Gray walked into the federal courthouse if she is making false statements to

the federal government.  Even so, that's not a reason to dismiss the complaint.  Gray didn't lie to the Court itself, *see* Fed. R. Civ. P. 11, but a false statement to some other part of the government isn't a reason for dismissal.

A false statement to the federal government under penalty of perjury might provide an opportunity for a moment of quiet reflection.  But it's not a basis to toss a claim about Experian's duty to reinvestigate.  So, for now, that claim survives.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.

Date:  March 30, 2026

Steven C. Seeger
United States District Judge

18